James W. Falciglia, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 12, 1980, before Judges WILKINSON, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*James W. Falciglia,* petitioner, for himself.

*Charles G. Hasson*, Assistant Attorney General, with him *Richard Wagner*, Chief Counsel, and *Edward G. Biester, Jr.*, Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, November 26, 1980:

James W. Falciglia (Claimant) appeals to this Court from a decision of the Unemployment Compensation Board of Review (Board) denying benefits to him because he voluntarily terminated his employment without cause of a necessitous and compelling nature.[1]

The proceedings in this case were conducted as an interstate claim, Claimant being a resident of Louisiana and his former employer, Cadillac Cable Corp. (Company), having its office in Frackville, Pennsylvania. The claim was denied by the Interstate Claims Office of the Bureau (now Office) of Employment Security (Office) in Pennsylvania. When Claimant took an appeal from that determination, the case was assigned to a referee in Louisiana who heard the Claim*ant's testimony* and that of Claimant's witness, a former vice president of the Company. The Company presented no testimony nor was it represented at that hearing notwithstanding the fact that there were Company offices in Bossier, Louisiana where the hearing was held.

When the testimony was transcribed and sent to Pennsylvania, the referee assigned to the case entered a preliminary order which stated that inasmuch as Claimant had appeared and the employer had not, that the Claimant's evidence was competent and that the Bureau's (Office's) exhibits were pertinent and should be considered in determining the Claimant's eligibility, the transcript of the testimony taken in Louisiana would be admitted into evidence. That order did not admit into evidence the documents submit-

---

[1] Section 402(b) (1), Act of December 5, 1936 (Act), Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b) (1).

ted to the Office. Subsequently, the referee entered his decision denying unemployment compensation benefits to the Claimant holding that the Claimant had not met his burden of proving necessitous and compelling reasons for terminating his employment. He concluded that the Claimant had quit due to the "embarrassment" of having the Company select another person over him as vice president. The Board affirmed the referee's decision by adopting the referee's findings and conclusions.

Throughout his testimony, Claimant maintained that the reason he quit was because the Company failed to honor a financial commitment made to him. He testified that the Company induced him to relocate from the Company's operations in Pennsylvania to its operations in Louisiana when the former president of the Company promised him a $5,000 per year increase in salary payable $2,500 before he left Pennsylvania and $2,500 after he arrived in Louisiana. Claimant received the first installment but not the second. His witness, a former vice president of the Company, testified that the new president who took over the Company before Claimant left Pennsylvania was aware of the salary commitment made to the Claimant by his predecessor, but the new president made up his mind not to honor that commitment. Before the Claimant left Pennsylvania he contacted the new president who confirmed the fact that the Claimant should move, but he failed to inform the Claimant that the salary commitment made to him would not be honored. It was not until Claimant moved to Louisiana that he first learned of this turn in events. Claimant argues to us that the referee's finding that he quit because of personal embarrassment at not being considered for the vacant position of vice president of the Company is in capricious disregard of Claimant's evidence that he quit because he was deceived by the Company when he agreed to relocate in Louisiana.

In its brief, the Board excises some of Claimant's testimony out of context in an attempt to substantiate its findings that Claimant quit over the issue of who would be the next vice president of the Company. Our reading of that portion of the record (notes of testimony, page 5) indicates to us that Claimant nowhere said he was "embarrassed" by that incident, but what did upset him to the point of making the hard choice of quitting was that in his salary discussions about the position Claimant *then* had, the president still would not consider making any increases retroactive to the time Claimant relocated as promised in the Company's original commitment.

Although the Board's brief does not allude to the papers sent to the Office, we are convinced that that is the only place in the record where the mention of "embarrassment" to Claimant occurs. In fact, the referee's finding on this point is almost a verbatim quotation from a letter purporting to be from Claimant to the Company which was sent to the Office with a cover letter from the employer.[2]

---

[2] The letter purported to be from the Claimant, dated March 12, says in pertinent part

I have decided the conclusions that were reached and at first agreed upon are not a solution to our respective situations. The dilemma caused by Cadillac's intransigence regarding income associated with my move here, has not been removed. *In addition, the potential for personal embarrassment to me connected with the probable selection of a vice president, is not acceptable to me.* (Emphasis is in the original, but whether the emphasis was by the Claimant or the Company is not clear.)

The Company's cover letter states in pertinent part

Mr. Falciglia resigned his position with Cadillac Cable Corp. effective 03-12-79 through written letter of resignation. *His primary reason given here for his resignation was his disappointment in the fact that he had not been offered the position as Vice President of Sales and Marketing that had recently been vacated.* (Emphasis in the original.)

As we have noted, the papers submitted to the Office were never admitted into the record of this case, nor could they be unless they were offered at a hearing where Claimant would have the opportunity to object. *Lotz v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 239, 375 A.2d 899 (1977) and *Bicer v. Unemployment Compensation Board of Review*, 31 Pa. Commonwealth Ct. 519, 377 A.2d 828 (1977). Clearly, the Board's reliance upon such evidence was erroneous.

It is true, as the Board contends, that dissatisfaction with wages or working conditions is normally insufficient to constitute necessitous or compelling reasons to quit. *Owen v. Unemployment Compensation Board of Review*, 26 Pa. Commonwealth Ct. 278, 363 A.2d 852 (1976). However, this Court has also held that where an employee is deceived as to conditions later alleged to be erroneous, he cannot be denied unemployment compensation benefits notwithstanding a voluntary termination. *National Freight, Inc. v. Unemployment Compensation Board of Review*, 34 Pa. Commonwealth Ct. 161, 382 A.2d 1288 (1978) and *Mosley v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 447, 327 A.2d 199 (1974).

When the Board determined that it was Claimant's embarrassment about not receiving the appointment to the position of vice president, a conclusion it could not reach without considering the letters heretofore mentioned which were not admitted as a part of the record of the case, it failed to consider and determine whether the Company's default with respect to the pay increase promised for the Claimant's relocation was a deception. Where the Board fails to make adequate findings sufficient for us to perform our appellate review, the appropriate procedure is a remand. *Sheaffer v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 88, 325 A.2d 477 (1974).

ORDER

AND Now, this 26th day of November, 1980, the order of the Unemployment Compensation Board of Review, dated July 20, 1979, is vacated and the case is remanded for further proceedings consistent with the foregoing opinion.